KILBY CAR & FOUNDRY CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6931.    Decided September 30, 1926.

A corporation which, through a change of business conditions, has no use for a building erected for a particular purpose and abandons the building, is entitled to deduct from gross income in the year of abandonment the loss sustained by reason of such abandonment.

*Niel P. Sterne, Esq.,* for the petitioner.
*Ward Loveless, Esq.,* for the respondent.

This is a proceeding for the redetermination of a net deficiency in income and profits taxes for the years 1919, 1920 and 1921, in the amount of $5,536.89, the deficiency letter from which the appeal is taken showing a deficiency in tax for 1920 of $5,801.27 and over-assessments of tax for the years 1919 and 1921 of $138.61 and $325.77, respectively. The questions at issue are (1) the rate of depreciation to be applied on certain buildings and equipment; (2) the deductibility of an amount claimed to represent a loss sustained as a result of the rusting away and complete destruction of iron sheets and a definite abandonment of a certain building in 1920; and (3) the deductibility of an amount claimed to represent a loss on a certain rolling-mill building. There is the further question as to the jurisdiction of the Board to determine the correct amount of the over-assessments determined for the years 1919 and 1921.

### FINDINGS OF FACT.

1. The petitioner is an Alabama corporation engaged in the manufacture of small cars for the use of logging and sugar cane business, a small part of its business also consisting of the production of bar iron on ten-inch rolls.

2. For the years 1919, 1920 and 1921, the petitioner, on its books of account and in its income-tax returns, charged off on the former and claimed as deductions from gross income in the latter a rate of depreciation upon its machinery and on a locomotive of 10 per cent, and on its frame manufacturing buildings and tenant houses a rate of 7½ per cent. It was stipulated between the parties that for depreciation purposes the following assets were owned by the petitioner and that the rates of depreciation claimed by the petitioner and allowed by the Commissioner were as follows:

| Assets. | Cost Jan. 1, 1919. | Cost Jan. 1, 1920. | Cost Jan. 1, 1921. | Depreciation claimed. | Depreciation allowed by Commissioner. |
|---|---|---|---|---|---|
| | | | | *Per cent* | *Per cent* |
| Frame tenant buildings | $3,099.48 | $3,099.48 | $2,908.23 | 7½ | 5 |
| Other frame buildings | 5,300.00 | 54,628.36 | 54,628.36 | 7½ | 5 |
| Locomotive | 2,286.88 | 2,286.88 | 2,286.88 | 10 | 7½ |
| Machinery | 125,440.05 | 125,533.05 | 126,447.05 | 10 | 7½ |

| | |
|---|---|
| Additions to frame buildings during 1919 | $1,628.36 |
| Additions to frame buildings during 1921 | 3,685.54 |
| Additions to machinery during the year 1919 | 93.00 |
| Additions to machinery during the year 1920 | 914.00 |
| Additions to machinery during the year 1921 | 16,323.59 |

It was further stipulated that depreciation upon additions to the assets should be allowed for one-half of the year during which the additions were made.

The tenant houses, 11 in number, were built about 1905 and were later purchased by the petitioner. They were constructed of an inferior grade of lumber, with shingle roofs. All of the houses are still in use, but they are in bad condition and must soon be repaired or abandoned.

The other frame buildings used in connection with the manufacturing were erected by the petitioner from time to time since 1912 to meet the expanding needs of its business. They were also constructed of an inferior grade of lumber and are covered with composition and metal roofs. Owing to the damaging effects of fumes from the plant and heat conditions, the average life of the roofing of these buildings was about three or four years. The buildings generally were subjected to exceptionally hard usage.

The locomotive was described as a 40-ton, mogul type. It was purchased about 1914 and scrapped in 1924, at which time it was worn out.

Approximately 90 per cent of the machinery was acquired second-hand. The life of such of the machinery was from 7 to 8 years. Some of the machinery, especially the wood-working machinery, had a life up to 12 years.

3. During the year 1918 the petitioner purchased, at a cost of $6.10 per square, approximately 235 squares of black sheet-iron, which was placed upon a certain building known as the 10-inch rolling-mill building and upon a building known as the bar-iron storage shed. During the year 1918 the petitioner erected the storage building above referred to and intended to use it for the storage of bar-iron for the retail trade. Most of the black sheet-iron was placed upon the storage shed. At the time the shed was erected, bar-iron was selling at unusually high prices and the petitioner believed that it could profitably enter into the business of manufacturing and selling this product. During the year 1920 the sheet-iron had rusted out and had become utterly worthless. During the same year the use of the storage shed was permanently abandoned on account of changes in business conditions, a drop in the prices of bar-iron resulting in the discontinuance of the bar-iron business. The uprights and boarding on the storage shed stood for a number of years, but no use was made of it and it was finally torn down in 1925 or 1926. The cost of the erection of the bar-iron shed had been charged to capital, but no separate account had been kept to show the exact cost. When the shed was abandoned in 1920, the petitioner charged off $3,000 as the estimated cost of the building. The concrete foundation of the shed had cost $872. It was estimated that the wooden framework cost $600, and that the black sheet-iron used on the building cost $1,528. The petitioner claimed as a deduction from gross income, in its income-tax returns for 1918 and 1919, certain amounts for depreciation in respect of the cost of the shed. The unextinguished cost of the shed as of December 31, 1919, was $2,865.

4. During the year 1918 the petitioner began the construction of a building which it is intended to use for the manufacture of bar-iron on 20-inch rolls, to be sold to the wholesale trade. Work on this building was in progress during the years 1918 and 1919 and during a part of the year 1920. The manufacture of bar-iron on 20-inch rolls required a building equipped for the handling of heavy weights in respect of raw material, material in process, and finished product. The foundations were made of concrete and the walls, to a height of six feet from the floor, were exceptionally thick. The building was equipped with apparatus such as crane-ways, hoists, etc., for the handling and conveying of heavy materials. The floors were on different levels, with drops of five or six feet from one level to another. During the year 1920 a severe business

depression caused the price of bar-iron, such as was being manufactured in the 20-inch rolling mill, to decline 50 per cent or more in the space of a few months. This unforeseen decrease in the price of bar-iron, unaccompanied by a proportionate decrease in the costs of labor and raw materials, caused the petitioner permanently to abandon all thought of manufacturing bar-iron for the wholesale trade.

The petitioner's executive officers in 1920 ordered work on the building to be abandoned and the machinery previously installed to be scrapped. The machinery and equipment were scrapped and the petitioner claimed on its books as a loss for 1920 the difference between the cost of the machinery and equipment and the salvage received from such scrapping. In its income-tax return for 1920 the petitioner claimed as a deduction from gross income a loss resulting from the scrapping of the machinery, which loss was allowed by the Commissioner. The petitioner, during the year 1920, broke with hammers such parts of the building as could easily be broken to show that it had permanently abandoned the use of the building as a rolling mill. The remainder of the building was left standing in the belief that it might later be utilized for some purpose.

The cost of the building as of December 31, 1919, as shown on the petitioner's books of account, was $20,129.16, less $802.34 theretofore taken as depreciation on the building. The unextinguished cost of the building at December 31, 1919, was $19,326.82. In 1923 and 1924 the petitioner decided to make certain additions to its factory that would include the site of the abandoned rolling-mill building. The rolling-mill building was offered to anyone who would salvage it, but the offer was not accepted. Finally, such portion of the building as was left standing was incorporated in the extensions as a part of the car shop, known as the fabricating shed, and it is still used as such. In the conversion it was necessary to make many changes. The concrete floor was broken up by the use of heavy weights and cranes. The converted building did not conform very well to the extension plans.

The petitioner estimated the residual value of the old building at the time of its conversion into the new shed at $8,324.54. This amount it deducted from the December 31, 1919, unextinguished cost of $19,326.82, and it charged off the remainder, $11,002.28, as a loss in its 1920 return. The estimated residual value of the building was arrived at by computing the cost of replacement of the parts utilized with steel construction. The Commissioner disallowed the deduction of the claimed amount of $11,002.28 as obsolescence for the year 1920,

50144°—27——85

OPINION.

SMITH: 1. On the part of the Commissioner it is contended that the Board has no jurisdiction to consider the correctness of his determination of overassessments for the years 1919 and 1921. The question herein involved is ruled by the decisions of the Board in the *Appeal of Cornelius Cotton Mills*, 4 B. T. A. 255, and *Appeal of Jay N. Darling*, 4 B. T. A. 499. It must therefore be held that the Board has no jurisdiction to consider the correctness of the overassessments for the years 1919 and 1921.

2. From a consideration of the entire evidence, the Board is of the opinion that depreciation of tenant frame buildings and of other frame buildings for the year 1920 should be computed at the rate of 5 per cent, rather than at the rate of 7½ per cent, and that depreciation on machinery and the locomotive should be computed at the rate of 10 per cent instead of at the rates determined by the Commissioner.

3. The petitioner definitely abandoned the use of its storage shed for bar-iron in 1920. The taxing statute permits the petitioner to deduct from gross income " losses sustained during the taxable year and not compensated for by insurance or otherwise." Section 234 (a) (4), Revenue Act of 1918. All the evidence in this case goes to show that the bar-iron shed became obsolete and that its further use was abandoned in 1920. The books of account of the petitioner do not show the cost of the shed separately from other buildings. We are satisfied, however, from a consideration of the entire evidence, that the unextinguished cost at December 31, 1919, was $2,771 and that the petitioner is entitled to deduct this amount from the gross income of 1920.

4. The high prices obtaining for bar-iron during the years 1918 and 1919 induced the petitioner to attempt the manufacture and sale of bar-iron, although it was not particularly advantageously located for such business. It therefore started the completion of a 20-inch rolling mill for bar-iron to be sold to the wholesale trade. Owing to the business depression in 1920, it became convinced that it could never manufacture bar-iron profitably, and it immediately dismantled the rolling mill, which at that time had not been entirely completed, and broke up certain parts of the building to indicate that it was its intention then permanently to abandon it. The petitioner was not certain whether it could at any time make any use of the building. It made no use of it during the next two or three years, but in 1923 or 1924 it decided to extend its car manufacturing plant, and, although the building was not adapted for such purposes, it was converted into a fabrication shed and made a part of the main building. We can not doubt from the entire evidence that the petitioner suffered a loss in 1920 by reason of its rolling mill becom-

ing obsolete. The taxing statute permits the deduction of such a loss. The evidence warrants a finding that the amount of the loss sustained in that year on its rolling-mill building was the amount claimed by the petitioner, namely $11,002.28.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*